**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**DAVID F. BRACKETT, JR.,**

          **Petitioner,**          Civil Action No. 3:14cv110

v.                                                Criminal Action No. 3:12cr59
                                                (Groh)

**UNITED STATES OF AMERICA,**

          **Respondent.**

## REPORT AND RECOMMENDATION

### I. Introduction

On October 9, 2014, the *pro se* petitioner, an inmate incarcerated at FCI Butner Low, in Butner, North Carolina, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. Because the motion was not on a court-approved form, the Clerk of Court issued a Notice of Deficient Pleading. On October 24, 2014, petitioner re-filed his petition on a court-approved form, along with a Combined Motion Requesting Permission to File an Oversized Brief and Include Legal Citations in Pleadings. By separate Orders entered on October 27, 2014, Petitioner's motion to exceed the page limit was granted and the Government was directed to respond. After being granted an extension, on February 9, 2015, the Government filed its response. On March 2, 2015, petitioner replied. On March 30, 2015, Petitioner filed a Supplement to his motion.

### II. Facts

**A. Conviction and Sentence**

On July 23, 2012, petitioner signed a plea agreement, agreeing to plead guilty to Count One and Two, of a two-count Information with a forfeiture allegation, charging him with wire fraud in violation of 18 U.S.C. §1343, and money laundering, in violation of 18 U.S.C. §1957(a).

(Dkt.# 19). The maximum penalty for his plea on Count One was specified as imprisonment for not more than twenty (20) years, a fine of not more than $250,000.00, and a term of no more than three years of supervised release. (Id. at 2). The maximum penalty for his plea on Count Two was specified as imprisonment for not more than ten (10) years, a fine of not more than $250,000.00, and a term of no more than three years of supervised release. (Id.) The parties stipulated and agreed that the total loss attributable to petitioner was at least $2,500,000 but less than $7,000,000.00; the offense involved at least 10 but less than 50 victims; and the offense involved misrepresentations by petitioner during the course of a bankruptcy proceeding, warranting a 2-level offense level increase under U.S.S.G. §2B1.1(b)(9)(B). (Id., ¶9 at 4). Petitioner also agreed that he understood that mandatory restitution was required and agreed to make such restitution to all victims. (Id., ¶10 at 4). In the plea agreement, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the agreement states:

> 17. The above paragraph notwithstanding, the defendant knowingly waives the right to appeal and collaterally attack any sentence within (or lower than) the Sentencing Guideline range calculated by the Court. This reservation of rights is designed to ensure that the United States and the defendant retain the benefits of the plea agreement. It does not represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this reservation of rights prevent the defendant from arguing for a sentence below the aforementioned Guideline range. The United States will retain the right to appeal any sentence imposed.

(Id., ¶17 at 5).

On August 27, 2012, Petitioner, then aged 63 and having had twelve years of education, entered his pleas in open court. (Dkt.# 48 at 4 - 5). Petitioner testified that he could read, write and understand English, and that other than his heart and pain pill "and stuff like that," denied having taken any medication, drug or alcohol within the previous 24 hour. (Id. at 4). He further

2

denied that any of his prescribed medications affected his ability to understand what was going on at the hearing. (Id.).  He denied any auditory impairment or other disability that would prevent his full participation in the hearing; and denied ever having had any treatment for mental illness or drug addiction.  (Id. at 5). During the plea hearing, the Assistant U.S. Attorney ("AUSA") read aloud or summarized in open court each paragraph of the plea agreement, including the paragraph 17 *supra*. (Id. at 7 - 16).  The Court specifically asked petitioner if he understood the waiver of his appellate and post-conviction relief rights and petitioner indicated that he did. (Id. at 17 and 24).   The Court inquired of defense counsel whether he felt that petitioner fully understood the waiver and its importance, and counsel replied "Yes, sir." (Id. at 17).  The Court asked petitioner whether he and his counsel had reviewed the plea agreement in detail before he signed it, and petitioner stated "Yes, sir." (Id.).

   The Court explained the elements of the charge of Counts One and Two that the Government would have to prove beyond a reasonable doubt to petitioner; petitioner indicated his understanding.  (Id. at 18 - 21).  The Court then informed Petitioner that the maximum sentence for the crime to which he was pleading in Count One was imprisonment for a period of not more than twenty years, a fine of not more than $250,000 and a term of at least three years of supervised release, and the maximum sentence in for the crime to which he was pleading in Count Two was imprisonment for a period of not more than ten years, a fine of not more than $250,000 and a term of at least three years of supervised release, but that the ultimate sentence could be greater than that estimated by his counsel; petitioner indicated that he understood. (Id. at 21 - 23).  The Court specifically asked petitioner whether he understood that the length of his sentence could not be determined by anyone until the PSR was completed and petitioner

indicated his understanding. (Id. at 22 - 23 and 32 - 33). The Court then summarized all the rights that petitioner was giving up by pleading guilty. (Id. at 24 - 26). To establish a factual basis for the plea, the Government presented the testimony of Don Boykin, Special Agent with the IRS, Criminal Investigation, IRS Division. (Id. at 26 - 31). Defense counsel declined the opportunity to cross examine the witness. (Id. at 31). The petitioner did not contest the factual basis of the plea.

After the factual basis for the plea was presented, the petitioner entered his pleas. (Id. at 31 - 32). The Court asked petitioner if he was, in fact, guilty of Counts One and Two of the Information and petitioner advised the Court that he was. (Id. at 32 - 33). When asked, petitioner denied that anyone had attempted to force or threaten him to plead guilty. (Id.). He denied that he was pleading guilty to protect anyone. (Id.). The Court asked petitioner if his lawyer had done a good job representing him and he responded "[y]es, sir." (Id. at 33). The Court further asked petitioner whether he thought that there was anything he thought that his lawyer left undone, or anything that he thought his lawyer did improperly, and petitioner stated "[n]o, sir." (Id.). At the conclusion of the hearing, the Court determined that: petitioner was competent; he had made his plea freely and voluntarily, with full understanding of its consequences; that there was a basis in fact for the plea and that the elements of the crimes had been established beyond a reasonable doubt. (Id.). Petitioner did not object to the Court's finding.

On December 3, 2012, petitioner appeared before the court for sentencing. (Dkt.# 49). The Court heard argument from defense counsel, pleading for leniency based on Petitioner's advanced age, health and gambling problem; recommending the lower end of the guidelines; and

4

requesting that his sentences run concurrently, given the time Petitioner was already facing and/or serving on other sentences in State court. (Id. at 18 - 25). Petitioner made a statement to the Court, apologizing and expressing remorse for his actions. (Id. at 25 - 26). The AUSA also recommended sentences at the lower end of the guideline, based on Petitioner's truthful debriefing and cooperation, but opposed concurrent sentences, given the magnitude of Petitioner's crimes; their devastating impact on his victims, many of whom lost their entire life savings; and the fact that his current jail time was being served incident to two probation violations on a prior offense, for which he initially received no jail time at all. (Id. at 26 - 29). The Court then heard testimony from the only victim in attendance, who recommended that the Court give Petitioner the maximum sentence possible and "throw the key away." (Id. at 30 - 33). Taking all necessary information into consideration, the Court then sentenced Petitioner to a term of 162 months imprisonment on Count One, and to 120 months on Count Two, the sentences to be served consecutively and consecutive to any other previous state or federal sentence facing Petitioner, including his sentence in Case No. 7-F-57 in Berkeley County West Virginia. Petitioner's instant sentences were to be followed by 3 years of supervised release on each count, to run concurrently. Petitioner was ordered to pay a $100.00 special assessment for each count. Further, he was ordered to make restitution in a total amount of $6,006,508.00 to the various victims, and to begin making $500/month payments immediately. (Id. at 33 - 42).

**B. Direct Appeal**

Petitioner filed a notice of appeal on December 6, 2012. (Dkt.# 33). On appeal, he argued that the District Court committed procedural error by failing to properly apply U.S.S.G. §5G1.2, and abused its discretion by imposing consecutive sentences. On June 12, 2013, by unpublished *per curiam* opinon, the Fourth Circuit Court of Appeals affirmed the District

Court's decision. (Dkt.# 50). Petitioner filed a petition for writ of *certiorari* with the United States Supreme Court; it was denied on October 21, 2013.

C. **Federal Habeas Corpus**

**Petitioner's Contentions**

Petitioner contends that

1) counsel was ineffective when he negotiated a plea agreement that provided no benefit to Petitioner and, because of Petitioner's advanced age, health problems, and the consecutive sentences he received, exposed Petitioner to what is essentially a life sentence;

2) counsel "made a multiplicity of prejudicial errors" during the sentencing phase; failed to make a "structural" error argument; and only offered a nominal objection to the consecutive sentences when they were imposed;

3) on appeal, appellate counsel's[2] argument challenging the imposition of consecutive, rather than concurrent sentences "was perfunctory and a 'dead-bang loser.'" Instead, appellate counsel should have made a "structural" error argument.

As relief, petitioner requests that his consecutive sentences be vacated; that he receive a new sentencing hearing, conducted in front of a different judge, so that with "competent counsel" he can argue against the imposition of consecutive sentences. (Dkt.# 69 at 13 and 30).

**Government's Response**

The Government asserts that the Court should deny the §2255 motion without an evidentiary hearing, because it relies on allegations that contradict Petitioner's sworn statements at his Rule 11 hearing, and otherwise fails to allege any material deficiency or prejudice associated with counsel's representation. (Dkt.# 80 at 1).

**Petitioner's Reply**

---

[2] Trial counsel and appellate counsel were the same, Eric. S. Black, Esq.

Petitioner reiterates his arguments and attempts to refute the Government's on the same. He reiterates his prayer for relief, and alternatively, asks the Court to "determine that he received IAC in plea negotiations, that his plea be set aside, and that he be appointed new counsel who will, in turn, negotiate a new plea agreement with the Government." (Dkt.# 85).

**Petitioner's Supplement/Addendum**

Four weeks after filing his reply, Petitioner filed a "Supplement/Addendum" to his §2255 motion. However, pursuant to Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts, only an answer and a reply are permitted. Moreover, Petitioner was advised, in the Order to Answer his petition, that pursuant to Rule 7 of the Federal Rules of Civil Procedure, no other pleading would be accepted without the express order of the court upon a motion duly made. Because petitioner filed no such motion and was not granted such permission, his Supplement/Addendum has not been considered by the undersigned.

### III. Analysis

**A. Burden of Proof**

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

**B. Barred Claims**

Before evaluating the merits of Petitioner's claims, the Court must determine which of his issues he may bring in his §2255 motion and which are barred either because they are not appropriately raised in a §2255 motion or because Petitioner's failure to raise them on direct appeal is not excused.

It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). See also Herman v. United States, 227 F.2d 332 (4th Cir. 1955). Constitutional errors that were capable of being raised on direct appeal but were not may be raised in a §2255 motion so long as the Petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged error. United States v. Maybeck, 23 F.3d 888, 891 (4th Cir. 1994). Claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because these claims are more appropriately raised on collateral attack than on direct appeal. See United States v. Richardson, 195 F.3d 192 (4th Cir. 1999), cert. denied, 528 U.S. 1096 (2000); White v. United States, 2006 U.S. Dist. LEXIS 45122, at *7-8 (S.D. W.Va. June 20, 2006).

Here, Petitioner's Ground Two and Three claims that both trial and appellate counsel were ineffective for not challenging his consecutive sentences in various ways are merely attempts to couch further attack on the Court's imposition of consecutive sentences, by alleging that counsel was ineffective for preventing their imposition  To the extent that Petitioner requests this court to review these issues on their merits, the court is barred from doing so because the claim has already been raised and rejected on direct appeal, albeit raised there as a "straight up" claim that the district court abused its discretion in imposing consecutive sentences. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976); see also United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (holding that the mandate rule "forecloses relitigation of issues expressly or impliedly decided by the appellate court.").

## C. Waiver

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977).  However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality."  Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement."  United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal."  The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused."  Id.  After upholding the general validity

9

of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel ("IAC") claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on

the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears

11

that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a §2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D. Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that §2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. §2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of §2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a

distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The unpublished *per curiam* decision in United States v. Morris, 247 Fed. Appx. 459; 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, during the Rule 11 colloquy, the Court specifically inquired whether petitioner understood the waiver of his appellate and post-conviction habeas corpus relief rights contained in the plea agreement and petitioner said that he did. (Dkt.# 48 at 17 and 24). Further, petitioner specifically testified that he understood that, incident to his plea agreement, in exchange for the concessions by the Government, he was waiving his right to appeal his sentence or to collaterally attack the legality of the guilty plea and sentence, as long as it was within the sentencing guideline range calculated by the court: a maximum sentence of twenty years (240 months) on Count One and a maximum sentence of ten years (120 months) on Count Two. (Id. at 21 - 22). The sentence he received on Count One was 162 months imprisonment, and his sentence on Count Two was 120 months. The undersigned finds that the only reasonable conclusion from this inquiry is that petitioner knowingly and voluntarily waived the right to collaterally attack his conviction and sentence and to file this §2255 motion, thus precluding a review of his only remaining claim, enumerated herein as Ground One.

## V. Recommendation

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's §2255 motion (Dkt.# 63 and 69) and **DISMISSING this case with prejudice**.

**Within fourteen (14) days** after being served with a copy of this report and recommendation, **or by September 22, 2015**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to file timely objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation**. 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: September 8, 2015

/s/   James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE